*290 KAREN NELSON MOORE, Circuit Judge,
dissenting.
The majority narrows in on Jonah Hol-brook’s email at the expense of two other crucial acts of expression: Holbrook’s Fa-cebook post and Holbrook’s conversation with Matt Flager. Because we must look at every act of expression in our analysis of a First Amendment retaliation claim—not just the act of expression we may deem the most important—I would consider both Holbrook’s Facebook post and Holbrook’s conversation with Flager. Accordingly, I dissent.
I. BACKGROUND
It is important to begin by discussing additional facts and clarifying the chronology. At the July 25 meeting, Stephanie Dumas, the Village Manager, told Fire Chief Holbrook that she had received a letter from the Village’s insurance provider stating that it was terminating the Village’s insurance, effective October 2. R. 22-1 (Insurance Letter at 1-2) (Page ID #213-14). Dumas confessed to Holbrook that she did not think that the Village would be able to obtain replacement coverage in such a short period of time given that the Village had nine lawsuits pending against it. R. 19-1 (Ex. A, Holbrook Dep. at 34) (Page ID #122); R. 22-5 (Letter to Mayor at 1) (Page ID #229). According to Holbrook, Dumas then told Holbrook that if the Village could not find replacement coverage, it would not be able to operate its Fire Department, and the Fire Department’s firefighters and other employees would lose their jobs. R. 19-1 (Ex. A, Holbrook Dep. at 34) (Page ID #122). Dumas, of course, denies saying that the Village might be forced to close the Fire Department. R. 20-1 (Def. Resp. to PI. Req. for Admissions ¶ 6) (Page ID #162). But Holbrook maintains that Dumas told him that the Village would not be able to operate its Fire Department if it did not find replacement coverage, and that Dumas seemed genuinely concerned about the possibility of obtaining this coverage in light of the pending lawsuits, even asking, “who else would insure us?” R. 19-1 (Ex. A, Holbrook Dep. at 34) (Page ID #122).
At the Village Council meeting the following Monday, Dumas informed Village residents that the Village needed to find new insurance. R. 19-1 (Ex. D, Council Meeting Mins, at 3) (Page ID #142), The majority notes that .the minutes from this meeting “do not reflect that any controversy ensued.” Maj. Op. at 281. This is true. But this may be because what the minutes do reflect is that Dumas dodged the issue. Dumas addressed the insurance letter only at the request of another attendee, and the extent of her comments were that the Village’s “insurance may[ ]be terminated.” R. 19-1 (Ex. D, Council Meeting Mins, at 3) (Page ID #142) (emphasis added).
These facts 'give us an idea of how the situation may have looked to Holbrook: Dumas told Holbrook that the Village was losing its insurance coverage, that she did not think the Village will be able to find replacement coverage, and, if this happened, that the Village would have to close its Fire Department. Dumas then gave Village residents a sanitized version of what she told Holbrook. Holbrook may have felt like the onus was on him to warn Village residents about what could happen. Of course, it is possible that Holbrook’s version of events is exaggerated. But this context demonstrates that the majority too easily adopts Dumas’s characterization of Holbrook’s email as “alarmist.” Maj. Op. at 285, 286.
It is also important to review the order in which the events unfolded. Dumas and Holbrook’s initial meeting was on Friday, July 25. R. 19-1 (Ex. A, Holbrook Dep. at 34) (Page ID #122); see also R. 22-2 *291 (Emails at 1-2) (Page ID #215-16). After the meeting, Dumas emailed Holbrook a copy of the insurance letter. R. 22-2 (Emails at 1-2) (Page ID #215-16). Hol-brook forwarded Dumas’s email the next day, on Saturday, July 26. Id. at 1 (Page ID #215). In the body of his email, Hol-brook asked the recipients to go to the Village Council meeting on Monday. Id. On July 30, the Wednesday after the Village Council meeting—where again, all that Dumas said was that the Village’s “insurance may[ ]be terminated,” R. 19-1 (Ex. D, Council Meeting Minutes at 3) (Page ID #142) (emphasis added)—Holbrook posted on Facebook that the Village’s Fire Department was “in jeopardy,” R. 19-1 (Ex. B, Questionnaire Resp. at 1) (Page ID #137). Around this same time, Holbrook discussed the issue with his friend, Flager. R. 22-8 (Holbrook Aff. ¶ 13) (Page ID #237).
On August 5, less than a week later, Dumas called Holbrook into her office and asked him if he had forwarded the insurance letter that she had emailed him on July 25. Id. ¶ 7 (Page ID #236). When Holbrook admitted that he had, Dumas told him that she would send him a written questionnaire and that she would ask for his resignation once she received his answers. Id. Dumas sent the questionnaire on August 7, R. 19-1 (Ex. B, Questionnaire Resp. at 1) (Page ID #137), and Holbrook sent his responses on August 8, R. 22-8 (Holbrook Aff. ¶ 8) (Page ID #236). Hol-brook then wrote a letter to the Village’s Mayor, lodging a complaint against Dumas. R. 22-5 (Letter to Mayor at 1-2) (Page ID #229-230).
On August 12, Holbrook received a letter from Dumas, informing him that he was suspended with pay effective August 11. R. 22-8 (Holbrook Aff. ¶ 10) (Page ID #236). That same day, Holbrook and Dumas arranged to meet on August 15. Id. However, Dumas called Holbrook on August 15 to cancel their meeting and inform Holbrook that he was terminated. Id. ¶ 11 (Page ID #236-37). Dumas followed up with a letter confirming Holbrook’s termination on August 26, which outlined the reasons for his termination. Three of these reasons concerned Holbrook’s discussions about the potential ramifications of the Village losing its insurance coverage:
[Holbrook’s] [t]ext [message] to Fire Department personnel informing them they would not have a job effective October 2,2014.
[Holbrook’s] [p]ost on Facebook indicating Fire Department personnel would not have a job as of October 2, 2014. [Holbrook’s] [discussion with Chief of Wyoming Fire Department indicating the Fire Department would not exist after October 2,2014.[1]
R. 22-7 (Termination Letter at 1) (Page ID #233). The letter does not mention Holbrook’s email (although the text message to the Fire Department’s employees told them that they could lose their jobs and then instructed them to wait for an email).[2] Id.; see also R. 19-1 (Ex. B, Questionnaire Resp. at 1) (Page ID #137).
II. CONTROLLING TEST
This court applies a burden-shifting framework to determine whether a public-employee plaintiff has proven a claim of retaliation in violation of the First Amend *292 ment. Benison v. Boss, 765 F.3d 649, 658 (6th Cir. 2014). First, the plaintiff must establish a prima facie case of retaliation by showing that
(1) [the plaintiff] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [the plaintiff] that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [the plaintiffs] protected conduct.
Id. (quoting Dye v. Office of the Racing Comm’n, 702 F.3d 286, 294 (6th Cir. 2012)). If the plaintiff establishes a prima facie case of retaliation, “the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.” Id. (quoting Dye, 702 F.3d at 294). “Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant.” Id. (quoting Dye, 702 F.3d at 294-95). In this case, only the first element of Holbrook’s prima facie case—whether Holbrook’s speech was constitutionally protected—is contested. Dumas does not dispute the second and third elements of Holbrook’s pri-ma facie case nor does she argue that the employment decision would have been the same absent the protected conduct.
III. HOLBROOK’S FACEBOOK POST AND HOLBROOK’S CONVERSATION WITH FLAGER
In previous First Amendment retaliation cases involving multiple acts of expression, we have analyzed each act of expression individually. See, e.g., Bonnell v. Lorenzo, 241 F.3d 800, 811-12 (6th Cir. 2001). In doing so, we have recognized that “[i]t is implicit in Connick [v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983),] that the court must examine each activity which the employee claims provided the actual motivation for his termination to see whether it touches upon a matter of public concern.” Id. (internal alterations omitted) (quoting Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ., 776 F.2d 443, 451 (3d Cir. 1985)). The majority, however, fails to consider two of the activities that Holbrook claims provided the actual motivation for his termination: Holbrook’s Facebook post and Holbrook’s conversation with Flager.
Holbrook raised both activities before the district court. Holbrook’s complaint very clearly addresses his Facebook post. After discussing Holbrook’s email to Fire Department employees, the complaint states that, “Holbrook posted a notice on his personal Facebook Page to the same effect.” R. 1 (Compl. ¶ 11) (Page ID #3) (emphasis added). The complaint then details how “Dumas wrote to Holbrook, explaining the grounds for his termination,” citing “his discussions by email, on Face-book, and with others.” Id. ¶ 16 (Page ID #3) (emphasis added). Holbrook’s complaint then alleges that “Dumas, through the actions set forth above, has retaliated against Holbrook for speaking about the possible inability of the Village to find insurance coverage for the Fire Department.” Id. ¶ 18 (Page ID #3) (emphasis added).
Holbrook copied and pasted the text of his Facebook post (including a comment he made on the post) into his answers to Dumas’s questionnaire, which is one of the exhibits attached to his deposition. R. 19-1 (Ex. B, Questionnaire Resp. at 1) (Page ID #137). Holbrook also addressed the Face-book post in his motion for summary judgment, in both the statement of facts, R. 22 *293 (Holbrook Am. Mot. for Summ. J. ¶¶ 7,15) (Page ID #204, 205-06) (“Holbrook posted on his Facebook Page the following message '... ”), and the argument section, id. at 8 (Page ID #208) (“Holbrook asserts that his emailing of the PEP letter to Fire Department employees, and subsequent actions disseminating the contents of that letter, constitute protected speech.” (emphasis added)). That the district court not only acknowledged but also analyzed Hol-brook’s Facebook post in its opinion demonstrates that this issue was sufficiently raised and considered below. R. 29 (Dist. Ct. Op. at 3, 5, 10, 12, 15) (Page ID # 310, 312, 317, 319, 322).
Moreover, Holbrook’s complaint states that Dumas’s termination letter cited his “discussions ... with others,” and the termination letter, which lists the conversation Holbrook had with the “Chief of [the] Wyoming Fire Department,” is attached to the complaint. R. 1 (Compl. ¶ 16) (Page ID #3) (emphasis added); R. 1-1 (Ex. C, Termination Letter at 1) (Page ID #10). Hol-brook’s motion for summary judgment explicitly refers to his discussion with Flager in the fact section, R. 22 (Holbrook Am, Mot. for Summ. J. ¶¶ 9, 15) (Page ID #204, 205-06) (“Holbrook also spoke with Matt Flager”), and argues that Holbrook’s “emailing of the PEP letter to Fire Department employees, and subsequent actions disseminating the contents of that letter, constitute protected speech,” id. at 8 (Page ID #208) (emphasis added). The district court mentioned Holbrook’s conversation with Flager, R. 29 (Dist. Ct. Op. at 3) (Page ID #310), but did not analyze it as protected speech. Given Holbrook’s discussion of the conversation in his summary judgment motion, however, it is not waived.
No valid reason exists for refusing to consider these two acts of expression. This is not to say that the majority does not offer up a reason for its decision; indeed, it offers up many. But none of these reasons finds any support in the law. For example, one of the reasons the majority gives for its decision is that the parties’ briefs focus “primarily” on Holbrook’s email (a qualifier the majority has to insert because, the parties’ briefs discuss the other acts of expression, too). See Maj. Op. at 284. But the majority does not cite any case holding that our consideration of First Amendment retaliation claims is necessarily limited to what, in our view, the parties have focused on.
Another reason the majority gives is that Holbrook’s email is what “provoked Dumas” and what “triggered Dumas’s ire.” Id. at 284, 285. As a preliminary point, nothing in the record supports the assertion that the email “provoked Dumas” or “triggered [her] ire.” See id. These colorful characterizations are the majority’s alone. However, I will assume that the majority recognizes that “ire” has no legal import in the context of First Amendment retaliation claims and that what the majority is really getting at is causation: that it was Hol-brook’s email that led to his termination, and that Holbrook’s Facebook post and Holbrook’s conversation with Flager are irrelevant.
As explained above, only the first element of Holbrook’s prima facie case— whether his speech was constitutionally protected—is contested. In looking at this element, “the court must examine each activity which the employee claims provided the actual motivation for his termination to see whether it touches upon a matter of public concern.” Bonnell, 241 F.3d at 811-12 (emphasis added) (internal alterations omitted) (quoting Johnson, 776 F.2d at 451). The question of causation—as the majority has framed it—cannot possibly be a part of the court’s analysis here, because Dumas does not dispute the sec *294 ond and third elements of Holbrook’s pri-ma facie case or even argue that the employment decision would have been the same absent the protected conduct. The majority’s refusal to consider these two acts of expression, therefore, is wholly improper.
Of course, if Holbrook asked us to consider acts of expression that-could not have possibly led to his termination, that would be different. For example, if Dumas fired Holbrook immediately after he forwarded her email and then Holbrook contended that a subsequent Facebook post or conversation also formed the basis of his termination, we would of course reject that argument. But that is not what happened here. Holbrook forwarded Dumas’s email, posted on Facebook, spoke with Flager, and then was terminated. What is more, the letter confirming his termination lists his Facebook post and his conversation with Flager as reasons for the termination.
For all these reasons, I respectfully dissent.

. As the majority observes, this is an error; Holbrook’s conversation was with Flager, the Assistant Fire Chief for the Wyoming Fire Department. R. 22-8 (Holbrook Aff. ¶ 13) (Page ID #237).

. Holbrook does not argue that the text message is protected speech and therefore has waived this argument on appeal.